IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROCHELLE BILAL, ET AL. | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 14-5438 |
| COLWYN BOROUGH, ET AL. | : | |

## MEMORANDUM

**SURRICK, J.**                                                    **AUGUST  25 , 2017**

Presently before the Court are Defendants' Motions to Dismiss.  (Hayes and Parham, ECF No. 12; Blue et al., ECF No. 13; Colwyn Borough and Williams, ECF No. 15.)  For the following reasons, Defendants' Motions will be granted in part and denied in part.

## I.      BACKGROUND

The lawsuit arises out of the arrests of Plaintiffs and the subsequent termination of their employment.  Plaintiffs assert multiple federal and state law claims against Defendants.

### A.      Factual Background[1]

Plaintiffs' Complaint alleges that on March 4, 2013, Colwyn Borough (the "Borough") hired Plaintiff Wanda Davis as a police clerk.  (Compl. ¶ 35.)  Her employment was directly supervised by Plaintiff Rochelle Bilal, Borough Director of Public Safety, and Tonette Pray, President of Borough Council and Chair of Public Safety.  (*Id.* ¶ 38.)  Plaintiffs were affiliated and associated with President Pray, who was a "political rival[] and adversar[y]" of Defendants. (*Id*. ¶¶ 144-45, 205.)

---

[1] For purposes of these Motions, the factual allegations in the Complaint are taken as true.  *See Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989).

Approximately four months into her employment, Bilal began to prepare internal memoranda and disciplinary paperwork against Defendant police officers Trevor Parham, Sr. and Jade Hayes. (*Id.* ¶¶ 41, 44-47, 208.) On July 21, 2013, an emergency meeting was called by the Borough Councilmembers to vote on whether Parham and Hayes were to receive disciplinary action for their behavior. (*Id.* ¶ 47.) Plaintiffs allege that Parham colluded with Hayes and Borough Mayor Defendant Daniel Rutland to execute a plan to arrest Plaintiffs in order to interrupt the disciplinary process. (*Id.* ¶¶ 48-49.) Defendants' plan to arrest Plaintiffs, as well as Defendants' subsequent actions, form the basis for Plaintiffs' claims.

Parham obtained a warrant for the arrest of Plaintiffs by filing an affidavit with the issuing judge. The affidavit stated that Plaintiffs had "improperly open[ed] mail of the Defendant Colwyn Borough and [engaged in] theft and conspiracy . . . ." (*Id.* ¶ 57.) On the day of the emergency meeting, Parham and Hayes arrested Davis and Bilal, and placed Davis in a holding cell. (*Id.* ¶ 49.) On July 23, 2013, the charges against Bilal and Davis were dismissed when a reviewing judge determined that, as Borough employees, Bilal and Davis had not acted illegally when they opened Borough mail. (*Id.* ¶¶ 49, 66-67.) The District Attorney of Delaware County agreed with the judge's summary dismissal of all charges against Plaintiffs, and held a press conference to make his views public. (*Id.* ¶ 68.)

Approximately six months later, on January 7, 2014, Plaintiffs were told not to show up for work, and were informed that they no longer had a job. (*Id.* ¶ 75.) Nevertheless, Plaintiffs went to their place of work. Plaintiffs were informed that if they entered the building they would be arrested. (*Id.*) Plaintiffs received no explanation of the reason for this termination and they were not given a pre- or post- termination hearing. (*Id.* ¶ 72.) Plaintiffs allege that they were terminated as part of a conspiratorial plan formed by all individual Defendants to oust President

Pray and her supporters. (*Id.* ¶ 145.) As a result of Defendants' actions, Plaintiffs have suffered significant economic and emotional harm. (*Id.* ¶¶ 81-83.)

**B.     Procedural History**

On September 22, 2014, Plaintiffs filed a Complaint alleging claims against the Borough and Borough employees Paul Meuser, Daniel Rutland, Paula Brown, Bryan Hills, Patricia Williams, Michael Blue, Trevor T. Parham, and Jade T. Hayes. The Complaint alleges violations of the United States Constitution under 42 U.S.C. § 1983 (Counts One through Seven). In addition, Plaintiffs assert violations of 42 U.S.C. § 1981 (Count Four), and §§ 1985 and 1986 (Count Five). Plaintiffs also bring state law claims for defamation and injurious falsehood (Count Eight); wrongful use and malicious prosecution (Count Nine); abuse of process (Count Ten); false imprisonment (Count Eleven); and violations of the Pennsylvania Constitution (Counts Twelve and Thirteen).

On October 16, 2014, Defendants filed a Motion for Extension of Time to File a Response. (ECF No. 3.) The Motion was granted. (Order, ECF No. 5.) Defendants Hayes and Parham filed a Motion to Dismiss Plaintiffs' Complaint (Hayes and Parham Mot. Dismiss, ECF No. 12); Defendants Blue, Brown, Hills, Meuser, and Rutland filed a Motion to Dismiss for Failure to State a Claim (Blue et al. Mot. Dismiss, ECF No. 13); and Defendants Colwyn Borough and Williams filed a Motion to Dismiss for Failure to State a Claim (Colwyn Borough and Williams Mot. Dismiss, ECF No. 15). Plaintiffs filed a Response in Opposition to Defendants Parham and Hayes' Motion to Dismiss.[2] (Pls.' Resp., ECF No. 16.) [3]

_____

[2] Even though Plaintiffs' Response was filed thirteen days after all three of the Motions to Dismiss were filed, Plaintiffs' Response addresses only the arguments made by Defendants Hayes and Parham.

[3] Defendants Parham, Hayes, the Colwyn Borough, and Williams also ask us to require Plaintiffs to file an amended complaint containing a more definite statement pursuant to Federal

## II.    LEGAL STANDARD

Under Federal Rule 8(a)(2), "[a] pleading that states a claim for relief must contain a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). A motion under Rule 12(b)(6) tests the sufficiency of the complaint against the pleading requirements of Rule 8(a). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint that merely alleges entitlement to relief, without alleging facts that show entitlement, must be dismissed. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). Courts need not accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . ." *Iqbal*, 556 U.S. at 678. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. at 679. This "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

---

Rule of Civil Procedure 12(e) for any claims that have not been dismissed. (Hayes and Parham Mot. Dismiss 18-22; Colwyn Borough and Williams Mot. Dismiss 21.) Plaintiffs oppose the Motions. (Pls.' Resp. 23-25.) Although Plaintiffs' Complaint is far from a model of clarity and sound legal reasoning, Defendants have been able to make cogent arguments for dismissal based on the pleadings. "A Rule 12(e) motion should be granted only when the pleading is so vague or ambiguous that the opposing party cannot respond, even with a simple denial, in good faith, without prejudice to itself." *Pettway v. City of Phila.*, No. 11-78, 2011 WL 2987994, at *1 (E.D. Pa. July 22, 2011) (internal quotation marks and citation omitted). Defendants' Motion for a more definitive statement will be denied.

In determining whether dismissal of the complaint is appropriate, courts use a two-part analysis. *Fowler*, 578 F.3d at 210. First, courts separate the factual and legal elements of the claim and accept all of the complaint's well-pleaded facts as true. *Id.* at 210-11. Next, courts determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679). Given the nature of the two-part analysis, "'[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *McTernan v. City of York*, 577 F.3d 521, 530 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679).

## III. DISCUSSION

### A. Federal Claims

Plaintiffs assert seven claims under Section 1983. "Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States." *Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.*, 422 F.3d 141, 146 (3d Cir. 2005) (citation omitted); *see also Goldwire v. City of Phila.*, No. 15-2856, 2015 WL 5334314, at *2 (E.D. Pa. Sept. 11, 2015) ("A cause of action under Section 1983 requires only two allegations: a person has deprived the plaintiff of a federal right, and that person acted under color of state or territorial law." (citing *Gomez v. Toledo*, 446 U.S. 635 (1980)). If a plaintiff brings a § 1983 claim against multiple defendants, he must prove that "each individual defendant violated his constitutional rights." *Estate of Smith v. Marasco*, 430 F.3d 140, 151 (3d Cir. 2005). The counts in Plaintiff's Complaint specifically allege that each individual Defendant violated Plaintiffs' rights, as set forth in each count. We will address each Count in turn.

*1.     Unreasonable Search and Seizure (Count One)*

Plaintiffs allege that they were arrested without probable cause in violation of their Fourth Amendment right to be free from unreasonable seizure. Plaintiffs allege that Parham and Hayes: (1) obtained a warrant to arrest Plaintiffs using false statements and deception, and (2) subsequently arrested and detained Plaintiffs against their will.

A § 1983 plaintiff who challenges the validity of an arrest warrant by asserting that law enforcement agents submitted a false affidavit must demonstrate: "(1) that the affiant knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and (2) that such statements or omissions are material, or necessary, to the finding of probable cause." *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997) (citations omitted). "A police officer may be liable for civil damages for an arrest if 'no reasonable competent officer' would conclude that probable cause exists." *Wilson v. Russo*, 212 F.3d 781, 789-90 (3d Cir. 2000) (quoting *Malley v. Briggs*, 475 U.S. 335 (1986)). "[A]n arrest warrant issued by a magistrate or judge does not, in itself, shelter an officer from liability for false arrest." *Id.* at 786 (citation omitted).

The Third Circuit has provided guidance for determining when an officer's omissions or false statements constitute "reckless disregard" when obtaining an arrest warrant. *Id*. at 788. The court in *Wilson* held that "omissions are made with reckless disregard if an officer withholds a fact in his ken that 'any reasonable person would have known . . . was the kind of thing the judge would wish to know.'" *Id*. (quoting *United States v. Jacobs*, 986 F.2d 1231, 1235 (8th Cir. 1993)). The court cited the Eighth Circuit, which held that "the omission [from the affidavit] occurred at least with reckless disregard of its effect upon the affidavit" due to "the highly relevant nature of the omitted information." *Id*. (quoting *Jacobs*, 986 F.2d at 1234). Once a

plaintiff has pled that an officer's omissions were "made knowingly, or with reckless disregard for the truth" a court must assess if the omissions "were material, or necessary, to the finding of probable cause." *Reedy v. Evanson*, 615 F.3d 197, 213 (3d Cir. 2010) (internal quotation marks and citations omitted). In order to determine if materiality exists, courts should "excise the offending inaccuracies and insert the facts recklessly omitted, and then determine whether the corrected affidavit would establish probable cause." *Id.* (internal quotation marks and citations omitted).

The affidavit of probable cause that Parham and Hayes submitted to the issuing judge accused Plaintiff Davis of "improperly opening mail of the Defendant Colwyn Borough and allegations of theft and conspiracy, amongst others." (Compl. ¶ 56.) Parham and Hayes did not, however, mention the fact that Plaintiffs were Borough employees—specifically, that Plaintiff Davis was a police clerk and that Plaintiff Bilal was the Public Safety Director. (*Id.* ¶ 60.) Rather, Defendant Parham "presented false or deceptive information" by stating that Plaintiffs "were not official employees of Colwyn Borough" even though he knew that Bilal was his superior and that Davis was Bilal's aid. (*Id.* ¶ 61.) Information regarding Plaintiffs' employment with the Borough is definitely "the kind of thing the judge would wish to know." *Wilson*, 212 F.3d at 788. In particular, Plaintiff alleges that one of Plaintiff Davis' job duties was to open and read the Borough's mail. (Compl. ¶ 67.) Clearly, Plaintiffs have pled facts sufficient to demonstrate that Defendants made false or misleading statements and deliberately omitted information including Plaintiffs' employment with the Borough in order to obtain a warrant. Plaintiffs have satisfied the first prong.

With regard to the second prong, a judge would want to know that Plaintiffs were Borough employees, and that Plaintiffs had "authority to receive, open, read and distribute mail .

. . sent to Colwyn Borough." (*Id.* ¶ 57.)  This information is clearly material to the determination of probable cause.  Had the issuing judge known of Plaintiffs' employment positions with the Borough, the issuing judge would not have found probable cause to issue the arrest warrant.  In fact, the charges against Plaintiffs "were summarily dismissed upon the judge learning" that Bilal was the Public Safety Director and Davis was Bilal's aid.  (*Id.* ¶ 54.)  Accordingly, Plaintiffs have pled sufficient facts to state a claim for false arrest against Parham and Hayes based on a lack of probable cause.[4]

2.       *Malicious Prosecution (Count Two)*

Plaintiffs allege that when Officer Parham initiated a "criminal proceeding" against them, they were maliciously prosecuted in violation of their First, Fourth, and Fourteenth Amendment rights.  In order for a plaintiff to prevail in a § 1983 claim of malicious prosecution, she must demonstrate that:

(1) the defendants initiated a criminal proceeding;

(2) the criminal proceeding ended in the plaintiff's favor;

(3) the proceeding was initiated without probable cause;

(4) the defendants acted maliciously or for a purpose other than bringing the

 plaintiff to justice; and

(5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as

 a consequence of a legal proceeding.

---

[4] Plaintiffs have not alleged any facts that demonstrate how Defendant Williams physically deprived Plaintiffs of their liberty.  Therefore, Plaintiffs' Count One claim against Williams must be dismissed.  Any § 1983 unreasonable search and seizure claims against Defendant Williams will be further addressed within the framework of the conspiracy and *respondeat superior* claims.

*DiBella v. Borough of Beachwood*, 407 F.3d 599, 601 (3d Cir. 2005) (citing *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003)).

With regard to the first prong, Plaintiffs allege that Defendants Rutland, Parham and Hayes initiated criminal proceedings against Plaintiffs. "Malicious prosecution actions are not limited to suits against prosecutors but may be brought . . . against other persons who have wrongfully caused the charges to be filed." *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004) (citation omitted); *see also Brockington v. City of Phila.*, 354 F. Supp. 2d 563, 569 (E.D. Pa. 2005) ("Although prosecutors rather than police officers are generally responsible for initiating criminal proceedings, an officer may, however, be considered to have initiated a criminal proceeding if he or she knowingly provided false information to the prosecutor or otherwise interfered with the prosecutor's informed discretion." (citation and internal quotation marks omitted)).

Plaintiffs' Complaint alludes to the fact that they were formally charged, as a consequence of Defendants' actions. Plaintiffs state the following: "Defendant Parham, in initiating the proceeding against Bilal and Davis . . . ." (Compl. ¶ 138); "As a consequence of the criminal proceeding initiated by Parham . . . ." (*Id.* ¶ 140); "the criminal charges brought by Defendant Trevor Parham against the Plaintiff Wanda Davis and Rochelle Bilal" (*Id.* ¶ 66); "The Delaware County District Attorney's office Attorney Jack Whelan . . . concurred that the criminal charges should be dismissed." (*Id.* ¶ 67); "[Plaintiff Wanda Davis] was illegally and wrongfully detained until arraignment." (*Id.* ¶ 70). Accepting these allegations as true and in the light most favorable to Plaintiffs, we proceed under the assumption that formal criminal proceedings were initiated against Plaintiffs.

The second prong is satisfied here since the reviewing judge dismissed the criminal charges against Plaintiffs and released Plaintiff Wanda Davis. (*Id.* ¶ 67.) The third prong is satisfied here because, as discussed in the preceding claim, Defendants did not have probable cause to arrest Plaintiffs.

With regard to the fourth prong, Plaintiffs argue that Defendants brought criminal charges against Plaintiffs to further their own self-interest. Specifically, Defendants sought to arrest and charge Plaintiffs in order to "foreclose, stall, or prevent Parham's termination, which was at the time being considered by Plaintiff Bilal." (*Id.* ¶ 137.) As support, Plaintiffs contend that Defendant Parham knew that Plaintiffs "were in the process of presenting discipline papers against him," and therefore initiated the action against Plaintiffs to stall the disciplinary process. (*Id.* ¶ 61.) This is sufficient to demonstrate that Defendant Parham initiated the criminal proceeding against Plaintiffs for purposes other than bringing Plaintiffs to justice.

Finally, Plaintiffs must allege a deprivation of liberty. "The tort of malicious prosecution permits damages for a deprivation of liberty—a seizure—*pursuant to legal process*. Generally, the offending legal process comes either in the form of an arrest warrant (in which case the arrest would constitute the seizure) or a subsequent charging document . . . ." *Nieves v. McSweeney*, 241 F.3d 46, 54 (1st Cir. 2001) (internal citations and quotation marks omitted) (emphasis in original); *see also Gallo v. City of Phila.*, 161 F.3d 217, 222 (3d Cir. 1998) ("[A] plaintiff asserting a malicious prosecution claim must 'show some deprivation of liberty consistent with the concept of seizure.'" (quoting *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 116 (2d Cir. 1995))).

The Third Circuit has provided that "substantial pre-trial restrictions on liberty—most prominently, custodial detentions—are 'seizures' when they are imposed in order to compel a

court appearance." *Schneyder v. Smith*, 653 F.3d 313, 321 (3d Cir. 2011) (citation omitted). In

*Black v. Montgomery County*, 835 F.3d 358, 368 (3d Cir. 2016), the Third Circuit held that a

plaintiff need not even be incarcerated in order to qualify as being "seized." Rather, the court

noted that the plaintiff was "clearly not free to leave" when she was forced to spend "more than

an hour being fingerprinted and photographed at a police station." *Id*. at 367. Here, Defendants

obtained a search warrant, and then arrested and searched Plaintiffs. (Compl. ¶¶ 59, 62, 64.)

Plaintiffs were then held in police custody for several hours. (*Id*. ¶ 62.) Like the plaintiff in

*Black*, Plaintiffs were held in police custody for several hours while they were photographed and

fingerprinted. Plaintiffs were handcuffed and forced to appear at a preliminary hearing in front

of the reviewing judge. Plaintiff Davis was then detained for two days, until the reviewing judge

ultimately released her. (*Id*. ¶¶ 49, 67.) This is certainly sufficient to qualify as a seizure. *See*

*Black*, 835 F.3d at 367-68; *Schneyder*, 653 F.3d at 321 (noting that "custodial detentions"

constitute a seizure); *Johnson v. Knorr*, 477 F.3d 75, 85 n.14 (3d Cir. 2007) (noting that a

plaintiff's "detention in the cell at the police station for approximately two days . . . constitutes a

deprivation of liberty consistent with the concept of seizure as a consequence of a legal

proceeding." (citation and internal quotation marks omitted)).

Accordingly, Plaintiffs have satisfied the requirements for pleading a malicious

prosecution pursuant to § 1983.[5]

---

[5] Plaintiffs have also satisfied the requirements for their state law claims of malicious prosecution against Defendants Parham and Hayes. The state law requirements are similar to the requirements of malicious prosecution for a § 1983 claim. Under Pennsylvania law, "[a] cause of action for malicious prosecution generally requires proof that the defendant (1) instituted criminal proceedings against the plaintiff (2) without probable cause (3) with malice and (4) that the proceedings terminated in favor of the plaintiff." *Tomaskevitch v. Specialty Records Corp.*, 717 A.2d 30, 33 (Pa. Commw. Ct. 1998) (citing *Kelley v. General Teamsters, Chauffeurs, and Helpers, Local Union 249*, 544 A.2d 940, 941 (Pa. 1988)). Accordingly, we find that Plaintiffs have sufficiently pleaded facts to satisfy the requirements of malicious prosecution under Pennsylvania law.

### 3. First Amendment Political Activity - Retaliation (Count Three)

Plaintiffs allege that they were terminated based on their political affiliations with President Pray, one of Defendants' adversaries. Plaintiffs contend that this termination violated their First Amendment right to political patronage. The Third Circuit has "derived a three-part test to establish a claim of discrimination based on political patronage in violation of the First Amendment." *Galli v. New Jersey Meadowlands Comm'n*, 490 F.3d 265, 271 (3d Cir. 2007). To make out a *prima facie* case, Plaintiffs must allege that: (1) they were "employed at a public agency in a position that does not require political affiliation," (2) they were "engaged in constitutionally protected conduct, and (3) this conduct was a substantial or motivating factor in the government's employment decision." *Id.*; *see also Gulick v. City of Pittston*, 995 F. Supp. 2d 322, 332 (M.D. Pa. 2014) ("It is well established that the First Amendment protects public employees from politically motivated termination unless party affiliation is an appropriate requirement for the effective performance of the public office." (citation and internal quotation marks omitted)).

With regard to the first prong, Plaintiffs were Borough employees. Bilal was the Director of Public Safety and Davis worked as a police clerk and as Bilal's assistant. (Compl. ¶¶ 35-38.) A plaintiff will satisfy the first prong if her employment position is a "position where political affiliation is not 'an appropriate requirement for the effective performance of the public office involved.'" *Montone v. City of Jersey City*, 709 F.3d 181, 189 (3d Cir. 2013) (quoting *Branti v. Finkel*, 445 U.S. 507, 518 (1980)). Nothing in the Complaint or instant Motions lead us to believe that their political affiliations were at all relevant, much less required, for them to effectively perform their respective jobs. Therefore, the first prong is satisfied.

With regard to the second prong, the Third Circuit, citing to the Supreme Court, has held that "public agencies may not constitutionally discharge employees based on their political affiliation . . . ." *Goodman v. Pennsylvania Tpk. Comm'n*, 293 F.3d 655, 663 (3d Cir. 2002) (citing *Branti*, 445 U.S. at 514-15); *see also Rojas-Velazquez v. Figueroa-Sancha*, 676 F.3d 206, 211 (1st Cir. 2012) (noting that "political affiliation itself is a constitutionally protected activity"). The Supreme Court noted that "[w]hen an employer demotes an employee out of a desire to prevent the employee from engaging in political activity that the First Amendment protects, the employee is entitled to challenge that unlawful action under the First Amendment and 42 U.S.C. § 1983." *Heffernan v. City of Paterson, N.J.*, 136 S. Ct. 1412, 1418 (2016). A plaintiff will still be protected even if she has not specifically joined a particular political party. *See Galli*, 490 F.3d at 272 ("[T]he constitutionally protected activity here is broader than the act of joining a political party."). "Indeed, 'the threat of dismissal for failure to provide support to the party in power unquestionably inhibits protected belief and association, and dismissal for failure to provide support only penalizes its exercise.'" *Id.* (quoting *Elrod v. Burns*, 427 U.S. 347, 359 (1976)). In addition, the Third Circuit has noted that political affiliation can refer to "affiliation with a particular politician or candidate." *Hill v. Borough of Kutztown*, 455 F.3d 225, 243 n.26 (3d Cir. 2006).

Here, Plaintiffs contend that their employment was terminated by Defendants Hills, Williams, Brown, Blue, Rutland, and Meuser because of their "association with Tonette Pray and/or Tonette Pray's political affiliation." (Compl. ¶¶ 77, 145.) Pray is the President of the Council and the Chair of Public Safety. (*Id.* ¶ 38.) Defendants Meuser, Rutland, Brown, Hills, Williams, Blue, Parham, and Hayes are political rivals and adversaries of Pray. (*Id.* ¶ 205.) Pray is a democrat and Defendants Meuser, Rutland, Hills, Williams, Blue, Parham, and Hayes are

"loyal members of the republican party." (*Id.* ¶¶ 139, 143.) Plaintiff alleges that each of the aforementioned Defendants dislike Plaintiffs because they are "democrats or aligned with the democratic Pray." (*Id.* ¶ 139.) Davis was hired to work under the supervision of Plaintiff Bilal and under Tonette Pray. (Compl. ¶ 38.) Davis was "perceived to be a close friend" of both Bilal and Pray, and Plaintiffs allege that they were terminated because of their affiliation with Pray. (*Id.* ¶¶ 40, 143-44.) Plaintiffs' affiliation with Pray and their failure to support Defendants is sufficient to satisfy the second prong.

Third, Plaintiffs must allege that their affiliation with Pray was a substantial or motivating factor in their termination. "A motivating factor does not amount to a but-for factor or to the only factor, but is rather a factor that motivated the defendant's actions." *Mullin v. Gettinger*, 450 F.3d 280, 284 (7th Cir. 2006). "Once a plaintiff demonstrates that an improper purpose was a motivating factor in the decision, the burden shifts to the defendant to show that the same decision would have been made in the absence of the protected speech." *George v. Walker*, 535 F.3d 535, 538 (7th Cir. 2008) (citation omitted). "[A] highly-charged political atmosphere, combined with the fact that plaintiffs and defendants are of competing political persuasions, may be *probative* of discriminatory animus." *Welch v. Ciampa*, 542 F.3d 927, 940 (1st Cir. 2008) (citation and internal quotation marks omitted) (emphasis in original). At the pleading stage, it is sufficient for a plaintiff to allege that "she was terminated by [the] defendants . . . by reason of her political affiliation . . . ." *Back v. Hall*, 537 F.3d 552, 558 (6th Cir. 2008) (citation omitted).

As discussed above, Plaintiffs allege that they were terminated because of their association with Pray. The Complaint alleges that there were longstanding political tensions within the Borough Council between Pray and Defendants. For example, Plaintiffs allege that

that Defendants Rutland and Meuser changed their political affiliation in order to influence the General Election. (*Id.* ¶ 144.) Plaintiffs contend that Rutland and Meuser did this in order to "oust" Councilwoman Pray, and therefore have the power to eliminate Plaintiffs. (*Id.*) Defendants' actions demonstrate that there was a "highly-charged political atmosphere," and that Defendants were specifically trying to remove Pray and her affiliates from their respective positions. *Welch*, 542 F.3d at 940. In addition, Plaintiffs have alleged that Defendants disliked them because they were democrats, and wanted them removed. At the pleading stage, this is sufficient to demonstrate that Plaintiffs' status as a democrat or their affiliation with Pray was, at the very least, a motivating factor in Plaintiffs' termination.

Accordingly, we find that Plaintiffs have sufficiently established a claim of retaliation in violation of the First Amendment.

### 4. *Gender and Race Discrimination (Count Four)*

Defendants Parham and Hayes contend that Count Four of the Complaint must fail as a matter of law because Plaintiffs have failed to identify a constitutional provision to support their gender discrimination claims. Section 1983 is not a source of substantive rights and, therefore, Plaintiffs "must allege a violation of federal right." *Berg v. Cnty. of Allegheny*, 219 F.3d 261, 268 (3d Cir. 2000). Count Four of the Complaint "repeat[s] preceding paragraphs" (*see* Compl. ¶ 150), and can be read to incorporate paragraph four, which asserts a Fourteenth Amendment right. Therefore, we conclude that Plaintiffs have asserted a Fourteenth Amendment equal protection claim.[6]

---

[6] In Count Four of the Complaint, Plaintiffs state that their gender discrimination claim is also based upon a violation of 42 U.S.C. § 1981. As Defendants Parham and Hayes point out in their Motion (*see* Parham and Hayes Mot. Dismiss 13), a § 1981 claim applies only to race discrimination. *See Deans v. Kennedy House, Inc.*, 587 F. App'x 731, 734 n.3 (3d Cir. 2014) ("[Section] 1981 applies to only race discrimination."). Plaintiffs' counsel appears to concede that they have not successfully pleaded a § 1981 racial discrimination claim (*see* Pls.' Resp. 11),

In order to plead a § 1983 claim for the denial of equal protection, a plaintiff must prove the existence of "purposeful discrimination." *Keenan v. City of Phila.*, 983 F.2d 459, 465 (3d Cir. 1992). Plaintiffs "must demonstrate that they received different treatment from that received by other individuals similarly situated. Specifically to prove sexual discrimination, a plaintiff must show that any disparate treatment was based upon her gender." *Andrews v. City of Phila.*, 895 F.2d 1469, 1478 (3d Cir. 1990) (internal quotation marks and citations omitted). When plaintiffs "allege race discrimination, they must show that any disparate treatment was based upon their race." *Clark v. Bd. of Educ. of Franklin Twp. Pub. Sch.*, No. 06-2736, 2009 WL 1586940, at *6 (D.N.J. June 4, 2009).

Here, Plaintiffs allege that they were treated differently than male employees, who, unlike Plaintiffs, were not targeted for opening the Borough's mail. (Compl. ¶¶ 157-58.) In addition, Plaintiffs contend that they were arrested, fired from their employment, and escorted from their workplace under threat of further arrest because they are female. (*Id.* ¶¶ 153-57.) Accepting the facts as true, Plaintiffs have sufficiently pleaded that they were treated differently than other employees. However, Plaintiffs make no factual assertions to plausibly conclude that the disparate treatment was based upon their gender. Plaintiffs baldly allege that Defendants targeted them because "they are females" (*see, e.g.*, ¶¶ 153, 154, 159), but they offer no gender-

---

and therefore, we need not reach Defendant Williams' and the Borough's contention that a § 1981 claim cannot be brought against state actors. Plaintiffs have, however, requested leave of the Court to file an amended complaint to make clear that their "race and gender claim under Section 1983" is based upon the "Fourteenth Amendment equal protection" requirements. (Pls.' Resp. 11-12.) Because we will conduct our analysis based on equal protection grounds, leave to amend the Complaint would be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (holding that the "denial of an opportunity to amend is within the discretion of the District Court" if such denial is based upon a reason such as "futility of the amendment").

based rationale, other than pointing out that some Defendants are male, (*see* ¶ 152). Moreover, Plaintiffs readily admit that "male employees were terminated by Colwyn Borough before and after the Plaintiffs." (*Id.* ¶ 172). Based upon Plaintiffs' threadbare recital of the elements, we cannot reasonably expect that discovery will reveal evidence of gender discrimination.

Plaintiffs' racial discrimination claim is even more deficient. Plaintiffs have not asserted any facts to demonstrate that they received disparate treatment from other similarly situated individuals. Plaintiffs allege that: Plaintiffs are "African American females" (Compl. ¶ 30); Defendants Brown, Williams, Blue, Parham, and Hayes are also "African Americans" (*Id.* ¶ 27); and Defendants Rutland, Meuser, and Hills are "white (Caucasian) males" (*Id.* ¶ 29). In addition, Plaintiffs allege that Defendant(s) "Rutland and/or Meuser" influenced the "outcome of [the] General Election . . . giving them power to then eliminate Bilal [and] Davis and all of the Blacks as they had constantly promised and threatened for months prior." (*Id.* ¶ 144.) Plaintiffs do not elaborate or explain how Defendants exercised such power, or whether other "black" employees did in fact lose their employment. Rather, based upon these scant factual allegations, Plaintiffs conclude that they were "deprived of equal treatment because of race." (*Id.* ¶ 29.) Plaintiffs have not stated a plausible claim for relief. Therefore, Plaintiffs' Fourteenth Amendment equal protection claim will be dismissed.

### 5. *Conspiracy (Count Five)*

Plaintiffs allege that Defendants Meuser, Rutland, Brown, Hills, Williams, Blue, Parham, and Hayes conspired to deprive Plaintiffs of their civil rights. "In order to prevail on a section 1983 conspiracy claim, a plaintiff must establish (1) the existence of a conspiracy involving state action and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy." *Gale v. Storti*, 608 F. Supp. 2d 629, 635 (E.D. Pa. 2009) (citation and internal

quotation marks omitted); *see also White v. McKinley*, 519 F.3d 806, 814 (8th Cir. 2008) ("To

prove a 42 U.S.C. § 1983 conspiracy claim, a plaintiff must show: (1) that the defendant

conspired with others to deprive him of constitutional rights; (2) that at least one of the alleged

co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) that the overt act

injured the plaintiff."); *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1260 (11th Cir. 2010)

("The plaintiff attempting to prove such a conspiracy must show that the parties reached an

understanding to deny the plaintiff his or her rights. The conspiratorial acts must impinge upon

the federal right; the plaintiff must prove an actionable wrong to support the conspiracy."

(internal quotation marks and citation omitted)). "[C]ivil conspiracy is a vehicle by which §

1983 liability may be imputed to those who have not actually performed the act denying

constitutional rights." *Cty. Concrete Corp. v. Town of Roxbury*, 442 F.3d 159, 174 (3d Cir.

2006). "To constitute a conspiracy, there must be a meeting of the minds." *Startzell v. City of

Phila.*, 533 F.3d 183, 205 (3d Cir. 2008) (citation and internal quotation marks omitted). "A

plaintiff must make specific factual allegations of combination, agreement, or understanding

among all or between any of the defendants to plot, plan, or conspire to carry out the alleged

chain of events." *Marchese v. Umstead*, 110 F. Supp. 2d 361, 371 (E.D. Pa. 2000) (internal

quotation marks and citation omitted). Courts must be "mindful that caution is advised in any

pre-trial disposition of conspiracy allegations in civil rights actions," because "direct evidence of

a conspiracy is rarely available . . . ." *Capogrosso v. The Supreme Court of New Jersey*, 588

F.3d 180, 184-85 (3d Cir. 2009) (internal quotation marks and citations omitted).

Here, it is alleged that each individual Defendant agreed to commit the Constitutional

deprivations discussed *supra*. Prior to their arrest, Plaintiffs were in the process of preparing for

an emergency meeting with the Council, where the Council members would vote on whether

Defendants Parham and Hayes would be subject to disciplinary action. (Compl. ¶ 47.) Plaintiffs allege that Defendants "colluded and conspired to a plan and course of action" to stop Bilal and Davis from presenting any disciplinary paperwork against Parham and Hayes at the Council meeting. (*Id*. ¶¶ 47-49.) Plaintiffs assert that Defendants agreed to arrest Plaintiffs in furtherance of the conspiracy. (*Id.* ¶ 120.) In addition, Plaintiffs allege that Defendants Hills, Meuser, Blue, and Rutland agreed to terminate Plaintiffs' employment because of their affiliation with Councilwoman Pray, discussed *supra*. (*Id.* ¶¶ 77, 145-46.) Plaintiffs contend that Defendants then conspired to "lock out" Plaintiffs from their office, warning Plaintiffs that if they came into the building they would be arrested. (*Id*. ¶ 79.)

Plaintiffs have sufficiently alleged that: (1) Defendants conspired to arrest Plaintiffs without probable cause to satisfy an ulterior motive (i.e., to sever political affiliations and to avoid disciplinary action), (2) Defendants actually falsely arrested Plaintiffs, terminated them, and prevented them from re-entering their place of work, and (3) Plaintiffs suffered emotional, economic, and reputational harm. At this early stage, it is reasonable to expect that discovery will reveal evidence that all individual Defendants participated in the conspiratorial plan to deprive Plaintiffs of their First and Fourth Amendment rights.[7]

### 6. *Monell Liability (Count Six)*

Plaintiffs bring a *Monell* claim against the Borough pursuant § 1983, alleging that: (1) the Borough failed to adequately train its police officers and government officials, (2) the

---

[7] Plaintiffs appear to incorporate a § 1985(3) action into their conspiracy claim. (*See* Pls.' Resp. 13-14.) Because we have dismissed Plaintiffs' race and gender equal protection claims for failing to state a claim upon which relief can be granted, any asserted § 1985 claims will similarly be dismissed. *See Suber v. Guinta*, 902 F. Supp. 2d 591, 608 (E.D. Pa. 2012) ("[B]ecause section 1985(3) requires the intent to deprive of equal protection, or equal privileges and immunities, a claimant must allege some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action in order to state a claim." (internal quotation marks and citation omitted)). Any § 1986 claims dealing with third party liability are also dismissed, as they would be predicated upon a § 1985(3) conspiracy claim.

Borough failed to adequately screen police officers during its hiring process and (3) Borough policymakers directed the alleged violations, namely Plaintiffs' arrest and termination.

Municipal liability under *Monell* is found "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts and acts may fairly be said to represent official policy, inflicts the injury." *Monell*, 436 U.S. at 694. The Borough may not be held liable pursuant to § 1983 under the theory of *respondeat superior*. *Hill*, 455 F.3d at 245. "Rather, a municipality may be held liable for the conduct of an individual employee or officer only when that conduct implements an official policy or practice." *Id.* As noted *supra*, Plaintiffs have sufficiently pled facts to state a violation of their First and Fourth Amendment rights. Therefore, our analysis will center upon whether there is a nexus between an official policy or custom and the alleged constitutional violations.

With regard to Plaintiffs' failure-to-train and failure-to-screen claims, Plaintiffs must allege that such a failure "reflects deliberate indifference to the constitutional rights of its inhabitants." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 392 (1989). A municipality will only be deemed to have demonstrated such a deliberate indifference "where the failure has caused a pattern of violations." *Berg v. Cty. of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000). A plaintiff must also demonstrate that the municipality's deliberate indifference caused the alleged constitutional violations. *Thomas v. Cumberland Cty.*, 749 F.3d 217, 222 (3d Cir. 2014); *see also Bd. of Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997) ("To prevent municipal liability for a hiring decision from collapsing into *respondeat superior* liability, a court must [be able to] carefully test the link between the policymaker's inadequate decision and the particular injury alleged."); *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999) ("[I]n order for a municipality's failure to train or supervise to amount to deliberate indifference, it must be shown

that (1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." (citations and footnote omitted)).  When addressing the issue of causation, courts should determine whether "the injury [would] have been avoided had the employee been trained under a program that was not deficient in the identified respect."  *Id*. at 358 n.61 (internal quotations and citation omitted)); *see also Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1029-30 (3d Cir. 1991) (holding that municipal liability "cannot be predicated solely on a showing that the [municipality's] employees could have been better trained or that additional training was available that would have reduced the overall risk of constitutional injury").

Here, Plaintiffs allege that the Borough "knew that employees and officials would confront a particular situation" because Plaintiffs were authorized to open Borough mail. (Compl. ¶ 172.)  Plaintiffs allege that the Borough should have foreseen that authorizing Plaintiffs to open Borough mail would lead to employee arrests.  (*Id*.)  Plaintiffs offer no other facts to support this allegation, such as a history of past arrests of employees.  Plaintiffs' Complaint is devoid of any connection between Borough screening, training, and/or supervisory practices and the alleged constitutional violations.[8]  We cannot plausibly conclude that officials could have foreseen that an authorized and legal practice of opening mail would lead to

---

[8] Plaintiffs also allege that "Colwyn Borough had a history of mishandling, and so to mishandle discrimination, retaliation and terminations, which terminations were due to protected status."  (Compl. ¶ 175.)  Plaintiffs offer no facts to substantiate such a bald assertion and are merely reciting elements of the claim.

employee arrests.  Accordingly, Plaintiffs have not sufficiently alleged a *Monell* claim under the theory that the Borough failed to properly screen, train, and/or supervise employees.[9] [10]

Plaintiffs also allege that Defendant Mayors Rutland and Blue,[11] and Police Chief Hills, as policymakers, directed the alleged violations.  In order for municipal liability to attach, an official must have "final policy-making authority" that binds the municipality by his conduct. *Hill*, 455 F.3d at 245.  In determining whether an official has authority sufficient to bind a municipality, courts should examine:  "(1) whether, as a matter of state law, the official is responsible for making policy *in the particular area* of municipal business in question, and (2) whether the official's authority to make policy in that area is *final and unreviewable*."  *Id.* at 245-46 (citations omitted) (emphasis in original); *see also Brennan v. Norton*, 350 F.3d 399, 428 (3d Cir. 2003) ("[I]f a municipal employee's decision is subject to review, even discretionary review, it is not final and that employee is therefore not a policymaker for purposes of imposing municipal liability under § 1983.").

In order to determine if an official had final, policy-making authority that could result in municipality liability, courts must look to state and local laws.  *See City of St. Louis v.*

_____

[9] Plaintiffs also appear to rely upon a ratification theory of *Monell* liability by asserting that all individual Defendants directed or allowed the violations against Plaintiffs to occur.  (*See* Compl. ¶ 173.)  Such an assertion can be addressed through supervisory liability, as Plaintiffs point only to discreet events and not to any policy or custom.  *See Wood v. Williams*, 568 F. App'x 100, 106 (3d Cir. 2014) (holding that a *Monell* claim utilizing ratification theory still must "plead [] facts showing what the unlawful policy or custom was" (citation omitted)).

[10] Defendants Parham and Hayes move for dismissal of the *Monell* claim, asserting that they are not a municipality and such a claim cannot be maintained against individual Defendants. From what we can gather from the Complaint, such claims are not being asserted against these individual Defendants.  To the extent that they are, they will be dismissed.

[11] Plaintiff's Complaint alleges that Mayor Rutland was the current Mayor on July 21, 2013 when Plaintiffs were unlawfully arrested.  (Compl. ¶ 20.)  Plaintiff's Complaint alleges that Mayor Blue was the Mayor at the time Defendants terminated Plaintiffs, and at that time, Rutland was the Borough Administrator.  (*Id.* ¶ 78.)

*Praprotnik*, 485 U.S. 112, 124 (1988) ("Authority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority, and of course, whether an official had final policymaking authority is a question of state law." (citation omitted)); *Chirdon v. Borough of Plum*, 92 F. Supp. 3d 360, 365 (W.D. Pa. 2015) ("Whether an official has final policymaking authority is a question of state law, which may include valid local ordinances and regulations." (citation and internal quotation marks omitted)).  Pennsylvania law provides that, as a general rule, the mayor "shall have full charge and control of the chief of police and the police force."  9 Pa. Cons. Stat. Ann. § 1123.1(a).  The mayor is permitted to "delegate to the chief of police or other officer supervision over and instruction to subordinate officers in the manner of performing their duties."  9 Pa. Cons. Stat. Ann. § 1123.1(c).

Plaintiffs allege that Defendants Rutland, Hills, Blue, and Meuser held policy-making authority during the dates in question, such that their actions are binding on the Borough. Plaintiffs allege that Mayor Rutland:  had the authority to oversee the day-to-day operations of the Borough Police Department.  (Compl. ¶ 20); conspired to stop Plaintiffs from presenting disciplinary paperwork against Defendants Hayes and Parham (*Id.* ¶ 48.); and condoned, ratified, and encouraged the Plaintiffs' arrest (*Id.* ¶ 51).  Plaintiffs alleges that Mayor Blue:  was "as supervisor and policy-maker" responsible for the daily activities of the police department (*id.* ¶ 24); "colluded, conspired and participated in" the termination of Plaintiff Davis (*id.* ¶ 77); actively participated in locking Plaintiffs out of their office building, and then threw away Plaintiff Davis' personal belongings (*id.* ¶ 78); told Plaintiffs that they were not permitted to enter the building in which they worked, and that they would be arrested if they attempted to enter the building  (*id.* ¶ 79); and directed Police Officers Kennedy and Hale to remove Plaintiffs

from the building where they worked and to not allow for them to re-enter the building under threat of arrest (*id*. ¶¶ 73, 74).

Since Pennsylvania law dictates that mayors have "full charge and control" over the police force, Plaintiff has demonstrated that Mayor Rutland and Mayor Blue had final, policy making authority when ordering a citizen's arrest. Plaintiffs' allegation that Mayor Rutland "encouraged" Plaintiffs' arrest invokes municipality liability. While it is not clear what exactly "encouraged" means in this context, we will permit Plaintiffs to engage in discovery in order to determine the extent to which Mayor Rutland ordered Plaintiffs' arrests. Similarly, Plaintiffs' allegation that Mayor Blue specifically directed police officers to remove Plaintiffs from their place of work under threat of arrest is sufficient to allege municipality liability.[12] Accordingly, Plaintiffs have sufficiently pled municipality liability through the actions of the Borough Mayors.

### 7.    *Supervisor Liability (Count Seven)*

Plaintiffs contend that Defendants Meuser, Rutland, Brown, Hills, Williams, Blue, Parham, and Hayes "are supervisors over all police employees," and therefore liable for the underlying police conduct. (Compl. ¶ 181.) Defendants Parham, Hayes, and Williams argue that an action relying upon supervisory liability cannot be maintained against them because there are no facts to support an allegation that they had supervisory control over the purported police acts or actors. A plaintiff can plead supervisor liability in two ways: (1) if the supervisors "established and maintained a policy, practice or custom which directly caused the constitutional

---

[12] Although we find that Plaintiffs' allegations are sufficient to survive Defendants' 12(b)(6) Motion, discovery will ultimately reveal whether Mayor Rutland and Blue's actions were final and unreviewable. *Hill*, 455 F.3d at 241. The Third Circuit noted that the plaintiff's allegations "about the manner in which [the mayor] exercised his mayoral powers [were] more than sufficient to withstand dismissal," however discovery would reveal whether the mayor ultimately had the authority needed to invoke municipality liability. *Id.*

harm" or (2) if the supervisors "participated in violating plaintiff's rights, directed others to violate them, or, as the persons in charge, had knowledge of and acquiesced in their subordinates' violations." *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010) (citation and internal quotation marks omitted).

With respect to the supervisor liability claims against Defendants Parham and Hayes, Plaintiffs allege that they (1) acquiesced in their subordinates' violations and (2) actively participated in violating Plaintiffs' Fourth Amendment rights. Plaintiffs allege that Parham and Hayes acted as supervisors over the police force, and acquiesced to their subordinates' violations. Plaintiffs allege that Parham and Hayes were "Corporal Police Officers of Colwyn Borough" who had "day-to-day supervision authority over the activities of other Police Officers of Colwyn Borough." (Compl. ¶¶ 26-27.) Plaintiffs also allege that police officer Michael Hale violated Plaintiffs' Fourth Amendment rights when they removed Plaintiffs from their work building under threat of arrest. (*Id.* ¶ 178.) Plaintiffs allege that "[e]ach defendant . . . failed to supervise and/or stop the Defendants" from locking Plaintiffs out of their workplace and refusing to let them back in, under threat of arrest, in violation of their Fourth Amendment rights. (*Id.* ¶ 77.) Based upon the alleged facts, it is reasonable to conclude that discovery will reveal evidence that Officers Hale and Kennedy were in a subordinate position to Parham and Hayes, and that Defendants had knowledge of and acquiesced in their subordinates' violations. Furthermore, as discussed *supra*, Plaintiffs have alleged that Parham and Hayes actively participated in violating Plaintiffs' rights when they: falsely arrested Plaintiffs; conspired to stop Plaintiffs from presenting disciplinary paperwork to the Council; and unreasonably seized and arrested Plaintiffs, and then placed them in a holding cell. Parham and Hayes' active

participation, in addition to their knowledge of their subordinates' participation, is sufficient to establish supervisor liability.

As to Defendant Williams, we cannot reach the same conclusion. Williams is a Borough Councilmember. Except stating that she, along with all other individual Defendants, was a police supervisor, Plaintiffs make no attempt to elucidate how her position as Borough Councilmember gave her direct supervisory control over police personnel. Moreover, Pennsylvania law suggests that Borough Councilmembers maintain no direct control over police activities. *See Hoffman v. Borough of Macungie*, 63 A.3d 461, 469 (Pa. Commw. Ct. 2013) ("[A] borough council may organize a police force, but the mayor controls its day-to-day operations."). Although we must accept all pleaded facts as true, Plaintiffs offer us no contrary factual allegations that would lead us to believe that Defendant Williams had control over police activities. Accordingly, any claims of supervisor liability against Defendant Williams will be dismissed.

### B.     Pendent State Law Claims

#### 1.     *Defamation and Injurious Falsehood (Count Eight)*

Defendants assert a state law claim for defamation and injurious falsehood. (Compl. ¶¶ 186-93.) Defendants Meuser, Rutland, Brown, Hills, Blue, and Williams contend that any such claims are barred by the statute of limitations. (Blue et al. Mot. Dismiss 13; Colwyn and Williams Mot. Dismiss 8-9.) Defendants Parham and Hayes have not raised the statute of limitations defense.

The tort of injurious falsehood "is subject to a one-year statute of limitations." *Maverick Steel Co. v. Dick Corp./Barton Malow*, 54 A.3d 352, 354 (Pa. Super. Ct. 2012) (citation omitted). In addition, Pennsylvania has a "one-year statute of limitations for defamation." *Wolk v. Olson*,

730 F. Supp. 2d 376, 377 (E.D. Pa. 2010) (citations omitted). The statute begins to run from the time of publication. *Id.*

Here, Plaintiffs assert that the false statements causing injury were published "on or about July 19, 2013." (Compl. ¶ 187.) The Complaint was filed with this Court on September 22, 2014, more than one year and two months after the alleged publication. Plaintiffs do not dispute this. Since six Defendants put Plaintiffs on notice nearly one year ago that their defamation and injurious falsehood claims were barred by the statute of limitations, and Plaintiffs have chosen not to respond, we are compelled to conclude that Plaintiffs do not disagree with Defendants. *See Robinson v. Johnson*, 313 F.3d 128, 134-35 (3d Cir. 2002) ("The purpose of requiring the defendant to plead available affirmative defenses in [a responsive pleading] is to avoid surprise and undue prejudice by providing the plaintiff with notice and the opportunity to demonstrate why the affirmative defense should not succeed."). Therefore, we will dismiss any defamation or injurious falsehood claims against Defendants Meuser, Rutland, Brown, Hills, Blue, and Williams.

Even though Defendants Parham and Hayes did not raise the statute of limitations defense, we will nevertheless dismiss Plaintiffs' defamation and injurious falsehood claims against them. "Although the statute of limitations is an affirmative defense . . . a complaint can be dismissed for failure to state a claim if the allegations show that relief is barred under the relevant statute of limitations." *Hunterson v. Disabato*, 244 F. App'x 455, 457 (3d Cir. 2007). Since the allegations within the Complaint clearly demonstrate that relief is barred under the statute of limitations, we will dismiss any defamation or injurious falsehood claims against all Defendants in this action as time-barred.

2.      *Wrongful Use and/or Malicious Prosecution (Count Nine)*[13]

Plaintiffs next bring a state law claim for what they call "wrongful use and/or malicious prosecution."  (Compl. ¶ 32.)  We have found that Plaintiffs sufficiently pled a malicious prosecution claim against Defendants Parham and Hayes.  We do not find the same to be true for Plaintiffs' claim against Defendant Williams.  Defendant Williams asserts that such an action cannot be maintained against her because there are no facts to support that she initiated or took part in the alleged criminal proceedings.  (Colwyn and Williams Mot. Dismiss 15.)

"A cause of action for malicious prosecution generally requires proof that the defendant (1) instituted criminal proceedings against the plaintiff (2) without probable cause (3) with malice and (4) that the proceedings terminated in favor of the plaintiff."  *Tomaskevitch v. Specialty Records Corp.*, 717 A.2d 30, 33 (Pa. Commw. Ct. 1998) (citing *Kelley v. General Teamsters, Chauffeurs, and Helpers, Local Union 249*, 544 A.2d 940, 941 (Pa. 1988)).  "[I]t is not necessary that [a] defendant initiate the proceedings himself.  Liability for malicious prosecution can also attach when [a] defendant influences a third party to initiate the proceedings."  *Bristow v. Clevenger*, 80 F. Supp. 2d 421, 432 (M.D. Pa. 2000).  Pennsylvania law holds that "[c]riminal proceedings are instituted when . . . [a defendant] is unlawfully arrested on a criminal charge."  *Gallucci v. Phillips & Jacobs, Inc.*, 614 A.2d 284, 290 (Pa. Super. Ct. 1992).

With regard to Defendant Williams, Plaintiffs have not alleged any facts indicating that she retained supervisory control over police activities or directly participated in the alleged false arrests.  Plaintiffs have not pled any facts indicating that Williams instituted criminal

---

[13] We are left to wonder which claim Plaintiffs are trying to assert under "wrongful use."  The only related state law claim that we can identify is "wrongful use of civil proceedings."  *See* 42 Pa. Cons. Stat. Ann. § 8351.  Because Plaintiffs have not alleged that Defendants initiated any civil proceedings against them, we will limit our analysis to criminal malicious prosecution.

proceedings against Plaintiffs. Therefore, Plaintiffs have not stated a plausible malicious prosecution claim against her that would entitle them to relief. As a result, Plaintiffs' state law malicious prosecution claim against Defendant Williams will be dismissed.

### 3. *Abuse of Process (Count Ten)*

Plaintiffs allege that Defendants abused the criminal process when they had Plaintiffs arrested to "aid political rivals" and to retaliate against Plaintiffs for initiating a disciplinary investigation against Parham. (*Id*. ¶¶ 205, 208). Defendants Meuser, Rutland, Brown, Hills, Blue, and Williams move to dismiss Plaintiffs' abuse of process claim because Plaintiffs did not allege facts that demonstrate that Defendants' actions created a perversion of an already instituted process. (Blue et al. Mot. Dismiss 12-13; Colwyn and Williams Mot. Dismiss 17.) Defendants Parham and Hayes argue that the claim must be dismissed because the arrest was supported by probable cause. (Hayes and Parham Mot. Dismiss 10-11.) Defendant Williams also contends that there are no factual allegations to support that she had any part in the initiation of the process. (Colwyn and Williams Mot. Dismiss 17.)

"To establish a claim for abuse of process it must be shown that the defendant (1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused to the plaintiff." *Werner v. Plater-Zyberk*, 799 A.2d 776, 785 (Pa. Super. Ct. 2002) (citation omitted). It only matters that the legal process was used "as a tactical weapon to coerce a desired result that is not the legitimate object of the process." *Id*. "Malicious use of civil process has to do with the wrongful initiation of such process, while abuse of civil process is concerned with a perversion of a process after it is issued." *McGee v. Feege*, 535 A.2d 1020, 1023 (Pa. 1987). The Third Circuit has noted that "[a]n abuse of process occurs when a party employs legal process against another primarily to

accomplish a purpose for which it was not designed." *Napier v. City of New Castle*, 407 F. App'x 578, 582 (3d Cir. 2010) (citing *Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.2d 297, 301 (3d Cir. 2003)); *see also Jennings v. Shuman*, 567 F.2d 1213, 1217 (3d Cir. 1977) (noting that abuse of process arises when "prosecution is initiated legitimately and thereafter is used for a purpose other than that intended by the law . . . ."). The court in *Napier* determined that a party's abuse of process claim will fail if the party alleges nothing more than an "incidental motive of spite or an ulterior purpose of benefit to the defendant." 407 F. App'x at 582 (quoting *Rosen*, 627 A.2d 190 at 192).

Defendants Meuser, Rutland, Brown, Hills, Blue, and Williams argue that the mere allegation that Defendants falsely arrested Plaintiffs is insufficient to state an abuse of process claim. Defendants argue that Plaintiffs must allege some further perversion of the criminal process in order to sufficiently state a valid claim. Here, Plaintiffs allege that Defendants abused the criminal process by using the process to retaliate against Plaintiffs. In support, Plaintiffs argue that Defendants initiated the criminal process against Plaintiffs "to aid political rivals and adversaries" of Pray, to replace Davis with a person of Defendants' choosing, and to retaliate against Bilal for initiating an investigation against Parham. (Compl. ¶¶ 205-08.) Plaintiff does not, however, allege any facts that Defendants perverted the criminal process. *See Feege*, 535 A.2d at 1023 ("An abuse is where the party employs it for some unlawful object, not the purpose which it is intended by the law to effect; in other words, a perversion of it . . . .") (citation omitted); *Triester v. 191 Tenants Ass'n*, 415 A.2d 698, 703 (Pa. Super. Ct. 1979) ("The gist of the [abuse of process] action is the proper issuance of the original process, but an abuse of that process after it has been issued such that there is a perversion of the process."). The Third Circuit, in illustrating the difference between malicious use of process and malicious abuse of

process, noted the following: "if the defendant justifies issuance of process by untruthfully saying that the plaintiff solicited burglary and uses the process only to have him jailed, this is malicious use only. It is not malicious abuse because jailing is the purpose for which criminal process was intended." *Shuman*, 567 F.2d at 1219.

Here, Plaintiffs solely allege facts that comport with malicious use. As with the example in *Shuman*, Plaintiffs allege that Defendants used the criminal process in order to have Plaintiffs jailed, and to thus satisfy their ulterior motives. However, the criminal process was intended to arrest, seize and put offending persons in police custody. Plaintiffs assert no factual allegations to support the proposition that Defendants threatened continued detention or prosecution against Plaintiffs for further gain. Rather, Plaintiffs allege that Defendants used the criminal process as it was intended, albeit for improper and nefarious reasons. This is insufficient to allege an abuse of process claim. Accordingly, we find that Plaintiffs' abuse of process claims must be dismissed.

> ### 4. *Deprivation of State Constitutional Rights (Counts Twelve and Thirteen)*[14]

In Counts Twelve and Thirteen of the Complaint, Plaintiffs assert claims under Article I, Sections 1, 7, 11, 25, and 26 of the Pennsylvania Constitution. (*See* Compl. ¶¶ 215-24.) Defendants contend that any monetary claims arising under the Pennsylvania Constitution fail as a matter of law because any such violations do not create a private right of action for damages.

"The prevailing view is that Pennsylvania does not recognize a private right of action for damages in a suit alleging violation of the Pennsylvania Constitution." *Gary v. Braddock Cemetery*, 517 F.3d 195, 207 n.4 (3d Cir. 2008); *see also Anderson v. Perez*, No. 14-6747, 2015 WL 5013704, at *5 (E.D. Pa. Aug. 24, 2015) ("Pennsylvania does not have a statutory equivalent

---

[14] Defendants have not moved to dismiss Plaintiffs' false imprisonment claim (Count Eleven) sounding in state law. Therefore, we will not address the sufficiency of the pleadings for this claim.

to [Section] 1983 providing a cause of action for damages."). "Although monetary relief is barred for claims under the Pennsylvania Constitution, equitable remedies are available." *Pocono Mountain Charter Sch. v. Pocono Mountain Sch. Dist.*, 442 F. App'x 681, 688 (3d Cir. 2011).

Despite the antithetical case law, Plaintiffs maintain that "district courts of the Circuit abandoned the old thought that there was no private right of action under the Commonwealth's constitution." (Pls.' Resp. 20.) We cannot come to the same conclusion. *See, e.g.*, *Collura v. City of Phila.*, 590 F. App'x 180, 186 (3d Cir. 2014) ("Neither Pennsylvania statutory authority nor appellate case law has authorized the award of money damages for violation of the Pennsylvania Constitution." (quoting *Jones v. City of Phila.*, 890 A.2d 1188, 1210 (Pa. Commw. Ct. 2006)); *Pocono Mountain Charter Sch.*, 442 F. App'x at 687 ("No Pennsylvania statute establishes, and no Pennsylvania court has recognized, a private cause of action for damages under the Pennsylvania Constitution." (citation omitted)); *Alicea v. Schweizer*, No. 14-0213, 2015 WL 4770680, at *12 (E.D. Pa. Aug. 12, 2015) ("Defendants are correct that there is no private right of action for monetary damages under the Pennsylvania Constitution."); *Anderson*, 2015 WL 5013704, at *5 ("No private right of action for damages exists under the Pennsylvania Constitution.").

Plaintiffs offer a selection of cases that purportedly stand for the proposition that a private right of action for monetary damages under the Pennsylvania Constitution can successfully be maintained. (*See* Pls.' Resp. 19-23.) Although the case law Plaintiffs offer does support the premise "that a private right of action is available for cases of gender discrimination under the Pennsylvania [Equal Rights Amendment]," *Pfeiffer v. Marion Ctr. Area Sch. Dist.*, 917 F.2d 779, 789 (3d Cir. 1990) *abrogated on other grounds by Fitzgerald v. Barnstable Sch. Comm.*, 555

U.S. 246 (2009), Plaintiffs have not made a claim under that particular provision, Article I, Section 28.

Therefore, to the extent that Plaintiffs seek monetary damages for violations of Article I, Sections 1, 7, 11, 25, and 26 of the Pennsylvania Constitution, their claims will be dismissed.

## IV.     CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss are granted in part and denied in part.  Counts Four, Eight, Ten, Twelve, and Thirteen will be dismissed against all Defendants. Any Section 1985 and 1986 claims asserted in Count Five of the Complaint will be dismissed against all Defendants.  Finally, Counts One, Seven, and Nine will be dismissed against Defendant Williams.

An appropriate Order follows.

**BY THE COURT:**

_____

**R. BARCLAY SURRICK, J.**